IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS DOMANTAY, ) | No. C 05-2216 MMC (PR) |
| ) | |
| Petitioner, ) | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; ORDER TO SHOW CAUSE** |
| v. ) | |
| ) | |
| J. BROWN, ) | |
| ) | |
| Respondent. ) | **(Docket No. 5)** |
| _____ ) | |

On June 1, 2005, petitioner, a California prisoner incarcerated at the San Quentin State Prison, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision by the Governor of California ("Governor") to deny him release on parole. The Court ordered respondent to show cause why the petition should not be granted. Respondent has filed a motion to dismiss the petition, and petitioner has filed an opposition. Although ordered to do so, respondent did not file a reply.

## BACKGROUND

In the late 1970s, petitioner, based on a conviction for first degree murder, was sentenced to a term of life in prison with the possibility of parole. Petitioner was first eligible for a parole hearing in 1984. In 2004, the California Board of Prison Terms ("Board") found petitioner suitable for release on parole. Thereafter, the Governor reversed the Board's decision. Petitioner's habeas petitions at all levels of the California courts were denied. Petitioner subsequently filed the instant petition, claiming the Governor's decision violates his liberty interest in being released on parole, as protected by the federal constitutional right to due process. Petitioner also claims the denial of parole violates his rights under the Ex Post Facto Clause.

**DISCUSSION**

A.   Due Process

Respondent argues the petition should be dismissed because petitioner has no federally protected liberty interest in parole. For the reasons set forth below, the Court finds respondent's argument unpersuasive.

Although there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," a state's statutory parole scheme, if it uses mandatory language, "creates a presumption that parole release will be granted" when or unless certain designated findings are made, and thereby gives rise to a constitutionally protected liberty interest. See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7, 11-12 (1979) (finding Nebraska parole statute, providing board "shall" release prisoner subject to certain restrictions, creates due process liberty interest in release on parole); Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (finding Montana parole statute, providing board "shall" release prisoner subject to certain restrictions, creates due process liberty interest in release on parole). Where such mandatory language is used, a prisoner gains a legitimate expectation in parole that cannot be denied without adequate procedural due process protections. See id. at 373-81; Greenholtz, 442 U.S. at 11-16.

California's parole scheme is set forth in California Penal Code § 3041. Section 3041(b) states that the parole board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Pen. Code § 3041(b).[1] Respondent's argument that this language does not give rise to a federally protected liberty interest has been rejected by

---

[1] If the Board finds the individual eligible for parole pursuant to § 3041(b), the Board sets a minimum parole eligibility date pursuant to § 3041(a), with the goal of providing uniform terms for individuals with similar offenses. In re. Dannenberg, 34 Cal. 4th 1061, 1098 (Cal. 2005).

the Ninth Circuit on two separate occasions. First, in McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), the Ninth Circuit found § 3041(b) contains the same type of mandatory language as the parole statutes at issue in Allen and Greenholtz, which language, as determined by the Supreme Court, gives rise to a protected liberty interest in release on parole. See id. at 901-02. Accordingly, the Ninth Circuit concluded, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." Id. at 902.[2] The following year, in Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), the Ninth Circuit reaffirmed this holding, finding § 3041(b) contains mandatory language that gives rise to a federally protected liberty interest in release on parole. See id. at 914-16 (finding Board's decision that petitioner was unsuitable for parole implicated his federally protected liberty interest in release on parole). Consequently, the law of this Circuit is that § 3041(b) gives rise to a federally protected liberty interest in release on parole, an interest implicated in the instant case by the Governor's determination that petitioner is unsuitable for parole.

Respondent argues that the decisions in Greenholtz and Allen are not applicable to the instant case in light of the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995). This argument was rejected by the Ninth Circuit in both McQuillion, see 306 F.3d at 903, and Biggs, see 334 F.3d at 914.[3]

Respondent also argues that the decisions in McQuillion and Biggs are no longer applicable in light of the California Supreme Court's more recent decision in In re Dannenberg, 34 Cal. 4th 1061 (Cal. 2005). In Dannenberg, the Board determined Dannenberg to be unsuitable for parole under § 3041(b) based on a finding that the nature of his second degree murder conviction demonstrated a continuing danger to public safety; the Board performed no analysis pursuant to § 3041(a) as to whether his term of incarceration

---

[2]The Ninth Circuit further noted that, in light of Greenholtz and Allen, its holding was based on "clearly established" federal law within the meaning of AEDPA. See id.

[3]Respondent cites Wilkinson v. Austin, 125 S.Ct. 2384, 2397 (2005), for the proposition that Sandin applies to the denial of parole. Austin involved what Sandin described as "the day-to-day maintenance of prisons," see Sandin, 515 U.S. at 482, specifically, the decision to house an inmate in a high-security facility, see Austin, 125 S.Ct. At 2397. Consequently, there is no holding in Austin that Sandin applies to the denial of parole.

conformed to that of other second degree murderers. See id. at 1074-75. The California Supreme Court granted certiorari to decide whether § 3041 prevents the Board from denying parole without conducting the uniformity analysis specified in § 3041(a), see id. at 1077, and held the Board need not engage in such an analysis under § 3041(a) if it first determines that public safety concerns require a lengthier period of incarceration, thereby making an inmate unsuitable for parole under § 3041(b). See id. at 1098.

This Court is required to give considerable weight to a state court's definitive interpretation of a state statute. See Gurley v. Rhoden, 421 U.S. 200, 208 (1975). Dannenberg, however, did not decide the question raised herein, namely, whether § 3041(b) gives rise to a protected liberty interest in release on parole. Rather, because it found the language in § 3041 was not "mandatory" with respect to uniformity of release dates under § 3041(a), see Dannenberg, 34 Cal. 4th at 1086-87, the California Supreme Court concluded that a California inmate has no liberty interest in a "uniform parole release date" under § 3041(a). See Dannenberg, 34 Cal. 4th at 1098 n.18. In so holding, Dannenberg did not address the question of whether the language in § 3041(b) contains the kind of mandatory language that creates a federally protected liberty interest in release on parole. Absent some further pronouncement from the California Supreme Court or the Ninth Circuit on that question, this Court follows the decisions in McQuillion and Biggs, and finds the Governor's decision in this case implicates a federally protected liberty interest in release on parole.[4]

Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 2254 to decide whether petitioner's Fourteenth Amendment right to due process was violated by the Board's determination that he was not suitable for parole.

---

[4]The Court notes that district courts in California have reached differing conclusions as to this question. Compare Murillo v. Perez, 2005 WL 2592420 at *3 n.1 (C.D. Cal. Oct. 12, 2005) (finding Dannenberg holding limited to uniform term provision of subsection (a) of § 3041; finding holding in McQuillon, that mandatory language of subsection (b) creates liberty interest, remains unchanged); Saif'ullah v. Carey, 2005 WL 1555389 at * 8 (E.D. Cal. June 28, 2005) (finding, after Dannenberg, liberty interest in parole in California); Hudson v. Kane, 2005 WL 2035590 at * 7 (N.D. Cal. Aug. 23, 2005) (same); with Sass v. California Bd. of Prison Terms, 376 F. Supp. 2d 975, 981 (E.D. Cal. 2005) (finding no protected liberty interest in parole under § 3041 after Dannenberg).

B.   Ex Post Facto

Petitioner claims that the Governor's reversal of the Board's grant of parole violated his constitutional rights under the Ex Post Facto Clause because the Governor did not have final parole authority at the time of petitioner's conviction in 1977.  The Governor was given such authority in 1988 with the passage of Proposition 89.  Respondent correctly argues that the Ninth Circuit has rejected petitioner's Ex Post Facto argument.  See Johnson v. Gomez, 92 F.3d 964, 967 (9th Cir. 1996).  Accordingly, petitioner's Ex Post Facto claim will be dismissed.

## CONCLUSION

In light of the foregoing, the Court orders as follows:

1.   Respondent's motion to dismiss is GRANTED in part and DENIED in part.  To the extent respondent moves to dismiss petitioner's Ex Post Facto claim, the motion is GRANTED and said claim is DISMISSED.  To the extent respondent moves to dismiss petitioner's due process claim, the motion is DENIED.

2.   Respondent shall file with the Court and serve on petitioner, within 60 days of the date this order is filed, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be granted based on petitioner's due process claim.  Respondent shall file with the answer and serve on petitioner a copy of all portions of the state trial record that have been transcribed previously and that are relevant to a determination of the issues presented by the petition.

If petitioner wishes to respond to the answer, he shall do so by filing a traverse with the Court and serving it on respondent within 30 days of the filing of the answer.

This order terminates Docket No. 5.

IT IS SO ORDERED.

DATED: July 25, 2006

_____
MAXINE M. CHESNEY
United States District Judge